## ATLANTIC COAST SHIPPING COMPANY et al.
### *vs.* MAMIE ROYSTER et al.

*Workmen's Compensation Law—Maritime Character of Acci-
dent—Admiralty Jurisdiction.*

Where a stevedore foreman, while assisting on the pier in
unloading a vessel, fell into the water and was drowned as a
result of being struck by a cable when it was suddenly tight-
ened by a windlass on the vessel, *held* that, since the initial

injury was received on the land, the accident was not of a maritime nature, and consequently the case was properly cognizable under the Workmen's Compensation Act.

*Decided June 11th, 1925.*

Appeal from the Superior Court of Baltimore City (STUMP, J.).

Claim by Mamie Royster and others, under the Workmen's Compensation Act, against the Atlantic Coast Shipping Company, employer, and the Employers' Liability Assurance Corporation, Limited, insurer. From a judgment affirming an award in favor of claimants, the employer and insurer appeal. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*John H. Skeen* and *Reuben Oppenheimer,* with whom were *Emory, Beeuwkes & Skeen* on the brief, for the appellants.

*Arthur R. Padgett,* with whom was *Charles Jackson* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The appellees are the widow and children of Luther Royster, who fell from a pier and was drowned in Baltimore Harbor during the course of his employment as a stevedore foreman. Compensation under the Maryland law was awarded his dependents by the State Industrial Accident Commission. Its order was affirmed on appeal by the employer and insurer to the Superior Court of Baltimore City. The appeal to this Court presents for review the action of the court below in refusing an instruction which would have involved a reversal of the order awarding compensation.

The facts are undisputed. Royster was assisting on the pier in unloading ore from the hold of a steamer. The ore

was being hoisted in tubs by machinery and dumped into cars on the pier. A wire cable attached to a steel windlass on the bow of the vessel was used to draw the cars into position for receiving the ore. The operation of the cable having become impeded by a low post on the pier, Royster was in the act of properly adjusting the cable when it was suddenly drawn taut by the windlass and struck him below the knees. As he fell backwards from the blow he caught hold of the cable, but could not retain that support and dropped into the water.

The question to be decided is whether, in view of the nature of Royster's employment, and of the fact that he was drowned in navigable water into which he was thrown by an appliance operated from the vessel he was helping to unload, his death should be held to have resulted from a maritime accident. If it must be so regarded, the case is not within the jurisdiction of the State Industrial Accident Commission, or of the tribunals to which it has been appealed. *Southern P. Co. v. Jensen,* 244 U. S. 205; *Clyde S. S. Co. v. Walker,* 244 U. S. 255; *Peters v. Veasey,* 251 U. S. 121; *Knickerbocker Ice Co. v. Stewart,* 253 U. S. 149; *Great Lakes Dredge & Dock Co. v. Kierejewski,* 261 U. S. 479; *Washington v. Dawson & Co.,* 264 U. S. 219; *Robins Dry Dock Co. v. Dahl,* 266 U. S. 449; Annotations, 25 A. L. R. 1029, 31 A. L. R. 518.

In *State Industrial Accident Commission v. Nordenholt Corp.,* 259 U. S. 263, it was held that the New York Workmen's Compensation Act could be applied to the accidental injury, resulting in the death, of a longshoreman engaged upon the dock in unloading a vessel lying in navigable waters in Brooklyn. The injury was caused by the fall of the longshoreman, Insana, from a pile of cement in bags which he was helping to tier up as the cargo was being hoisted from the vessel to the dock. In the opinion delivered for the Supreme Court, by Mr. Justice McReynolds, it was said: "When an employee working on board a vessel in navigable waters sustains personal injuries there and seeks damages

from the employer, the applicable legal principles are very different from those which would control if he had been injured on the land while unloading the vessel. In the former situation the liability of the employer must be determined under the maritime law; in the latter, no general maritime rule prescribes the liability, and the local law has always been applied. The liability of the employer for damages on account of injuries received on shipboard by an employee under a maritime contract is matter within the admiralty jurisdiction; but not so when the accident occurs on land." * * * Insana was injured upon the dock, an extension of the land (*Cleveland Term. & Valley R. Co. v. Cleveland S. S. Co.,* 208 U. S. 316), and certainly, prior to the Workmen's Compensation Act, the employer's liability for damages would have depended upon the common law and the state statutes. Consequently, when the Compensation Act superseded other state laws touching the liability in question, it did not come into conflict with any superior maritime law. And this is true whether awards under the act are made as upon implied agreements or otherwise. The stevedore's contract of employment did not contemplate any dominant federal rule concerning the master's liability for personal injuries received on land."

The initial injury sustained by the husband and father of the appellees in this case was received on the land, while its fatal result occurred in the water into which he fell. If he had succeeded in preventing his fall from the pier, any physical injuries inflicted upon him by the blow from the cable would unquestionably be within the remedial provisions of the Workmen's Compensation Act. The injuries being actually received on land, they would not acquire a distinctive maritime character merely because the cable which struck the plaintiff was moved by a windlass on the ship. If he had been hurt on the pier by falling over the cable, the fact that it was connected with the vessel would certainly not be sufficient to differentiate the case from the one we have cited, in which the falling of a stevedore on the dock, while handling

bags of cement as they were hoisted from the ship, was held not to be a maritime accident. The drowning of Royster was a consequence of the accident on the pier. The blow from the wire cable which caused him to fall into the water may have disabled him from swimming ashore or keeping afloat until he could be rescued. It was undoubtedly the efficient cause of the fatality. The decisive significance of the fact that the original injury occurred on the pier is emphasized by Mr. Justice McReynolds' reference, in *Washington v. Dawson & Co., supra,* to the case of *State Industrial Commission v. Nordenholt Corp., supra,* as one relating "to a claim based upon death which resulted from injuries received by the longshoreman while on the dock—a matter never within the admiralty jurisdiction."

In *Lermond's* case, 122 Me. 319, a pipe fitter employed on a ship engaged in interstate commerce was leaving the vessel by a ladder extending from the wharf to the deck, and was thrown into the water by the slipping of the ladder. He was injured by striking, in the course of his fall, a bumper log fastened to the wharf by wire cables. Because of the permanency of its attachment, the bumper log was considered by the court to be a part of the wharf, and the injury received from contact with it was therefore held to be one for which a claim was sustainable under the Workmen's Compensation Law of the state.

In *Martin v. West.* 222 U. S. 191, an injury to a bridge over a navigable stream, by the collision of a vessel with one of its piers, was held not to be an exclusive subject of admiralty jurisdiction. In answer to the argument that "as the collapsing span of the bridge fell into the river, it was there that the substance and consummation of the wrong took place," the Supreme Court said: "It may be that the damage ensuing from the collision was aggravated by the fact that the span fell into the stream and was subjected to the force of the current, and submerged in the water; but, if that be so, it furnishes no criterion for determining whether the tort was maritime or non-maritime, because that ques-

tion must be resolved according to the locality and character
of the injured thing—the bridge with its spans and support-
ing piers—at the time of the collision. It was then that the
causal influence of the negligent management of the vessel
took effect injuriously and gave rise to a cause of action; and
what followed is important only as bearing upon the extent
of the injury and resulting liability. This is well illustrated
in *Johnson v. Chicago & Pacific Elevator Co.,* 119 U. S.
388. There, the jib boom of a schooner, in the Chicago
River, was negligently driven through the wall of a ware-
house on adjacent land, whereby a large quantity of shelled
corn, stored in the warehouse, ran out into the river and was
lost. It was held that the substance and consummation of
the wrong took place on land, and that the tort was non-
maritime, although the damage inflicted consisted chiefly of
the loss of the corn. Other applications of the same princi-
ple are shown in *The Strabo,* 90 Fed. 110, and *The Haxby,*
95 Fed. 170."

The converse of the question in the present case is found
in the case of *The Strabo,* cited in the last quotation. It was
there held, as stated in the syllabus, that: "Where the libel-
lant, a workman on a vessel lying at a dock, attempted to
leave the ship by means of a ladder, by reason of the mas-
ter's negligence not secured properly to the ship's rail, where-
upon the ladder fell, and the libellant was thrown to the
dock, and injured, it is inferable that the master's breach of
duty took effect upon the libellant while he was upon the
ship; and, although his physical injury was completed by his
fall upon the dock, a court of admiralty has jurisdiction."

In *Mangieri v. Stephens,* 232 N. Y. 596, cited by the
appellants, a laborer employed by a wholesale coal dealer,
while pulling on a line with which he was towing a coal boat
to the dock, "slipped and fell into the water, which resulted
in his death." The Court of Appeals of New York held
that the employment was of a maritime nature and that the
Workmen's Compensation Act of the state did not apply.
That decision relied upon *Keator v. Rock Plaster Mfg. Co.,*

224 N. Y. 540, and *Newham v. Chile Exploration Co.,* 232 N. Y. 37, and those cases were decided upon the theory that a stevedore's contractual duty in the movement of cargoes to or from vessels has a maritime character which brings an injury sustained by him on the dock, in the course of the work, within the exclusive operation of the Federal law. But this view was held by the Supreme Court of the United States, in *State Industrial Commission v. Nordenholt Corp., supra,* to be erroneous, and the judgment of the Court of Appeals of New York in that case was consequently reversed.

The injuries with which we are concerned in the present case had their inception on land, though the death caused by the accident resulted in the water, and, in our opinion, the land incidents of the unfortunate occurrence were of sufficient consequence to justify the conclusion that the case is properly cognizable under the Workmen's Compensation Act of Maryland, and that the application of the local statute "will not work material prejudice to the characteristic features of the general maritime law or interfere with the proper harmony and uniformity of that law, in its international and interstate relations." *State Industrial Commission v. Nordenholt Corp., supra; Western Fuel Co. v. Garcia,* 257 U. S. 233.

*Judgment affirmed, with costs.*