WILLIAM HERBERT'S (dependent's) CASE.

Suffolk.   October 6, 1932. — June 27, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Workmen's Compensation Act*, To whom act applies, Injuries to which act applies, Dependency. *Jurisdiction. Admiralty.*

The workmen's compensation act was applicable, and permitted an award of compensation to the dependent of an employee of a subscriber thereunder, who worked on a scow which was used by the subscriber for the sole purpose of carrying garbage from Boston to Spectacle Island in Boston harbor, was at all times in navigable waters, and was always towed and had no motive power, where it appeared that the employee, while engaged in his duty of sweeping the deck of the scow, fell overboard and was drowned at a time when the scow was tied up at the wharf at that island: the work done by the employee was a mere matter of local concern and its regulation by the workmen's compensation act would not interfere with the characteristic features or the essential uniformity of the general maritime law.

Evidence before the Industrial Accident Board, that the employee above mentioned was seen sweeping the deck of the scow and that the work had not been finished when he fell backwards from the deck overboard and was drowned, warranted a finding that the fall was due to accident arising out of and in the course of his employment.

Testimony, in proceedings under the workmen's compensation act, that a deceased employee had paid for the board and room of his unmarried adult daughter and that he was her only source for money to purchase her clothing, warranted a finding that she was totally dependent upon his earnings.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

At the hearing before a single member of the board, it appeared that the employee died on April 15, 1931. His unmarried daughter, mentioned in the opinion, testified that she was born on May 12, 1900, and that she had worked for the eight years previous to May, 1930, when she lost her position. Other material evidence, and material facts found by the single member and affirmed and adopted by the board in review, are stated in the opinion.

By order of *F. T. Hammond*, J., a decree in accordance with the board's decision was entered. The insurer appealed.

*H. F. Tracy*, for the insurer.

*S. B. Horovitz*, for the claimant.

RUGG, C.J. The main question for decision is whether this claim can be prosecuted under the workmen's compensation act or whether it is outside the scope of that act because within the exclusive jurisdiction of admiralty. The pertinent facts are these: The deceased employee worked on a scow used by his employer only to carry garbage from Boston over navigable waters to Spectacle Island where it was unloaded. That island is distant about two miles from the shore and is in Boston harbor within the city of Boston. The scow was part of the time at Dorchester on the shore of the mainland and part of the time at Spectacle Island, all in navigable waters. It was always towed and had no motive power. The employee had quarters on the scow and slept there except that when it was tied up at Dorchester he usually slept at home. It was a part of his duty to sweep the deck of the scow after it was unloaded. The record does not disclose what were his other duties. The scow was tied up at the wharf at Spectacle Island. One witness testified: "The scow doesn't move; it might move an hour or two." Shortly before the accident the deceased had been seen sweeping the deck of the scow and the work had not been finished when he fell backwards and overboard and was drowned in the waters of Boston harbor. The finding of facts is rather meagre but both parties have argued the case on the theory that the above narration shown by uncontradicted evidence is in substance true and we treat the case as it has been treated by the parties.

The employer had voluntarily seen fit to insure, and the decedent also had elected to be bound, under the terms of the workmen's compensation act. The insurer freely undertook to protect the employer. So far as the parties are concerned they all chose to become subject to that statute. Unless the facts bring the case within the exclusive jurisdiction of maritime law, all rights, remedies and obliga-

tions of the parties must be determined in accordance with the workmen's compensation act. *Young* v. *Duncan*, 218 Mass. 346.

The words of the workmen's compensation act are broad enough to include the case at bar. The only point is whether it is permissible to grant relief by that act under the decisions of the United States Supreme Court as to the exclusiveness of admiralty jurisdiction. There is nothing in our own decisions to stand in the way. *Gillard's Case*, 244 Mass. 47. *Toland's Case*, 258 Mass. 470. Doubtless the accident here in question was maritime in nature at least in some aspects. It occurred upon navigable waters sometimes said to be the test whether it is of admiralty cognizance. *Atlantic Transport Co. of West Virginia* v. *Imbrovek*, 234 U. S. 52, 60. *Proctor* v. *Dillon*, 235 Mass. 538, 541. *Dorman's Case*, 236 Mass. 583. Recent authoritative decisions have laid down the principle however that where facts disclose a situation of mere local concern where regulation by State statutes will not materially prejudice essential features of general maritime law, local compensation acts may be operative. In *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469, where a carpenter engaged in the construction of a ship nearly completed was injured, it was stated at page 476 that as both parties had accepted and proceeded under a workmen's compensation statute "it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law. . . . Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations." In *Millers' Indemnity Underwriters* v. *Braud*, 270 U. S. 59, recovery was permitted under a State workmen's compensation act for the death of a diver who had submerged himself from a floating barge anchored in a navigable river for the purpose

of sawing off timbers of an abandoned set of ways which had become an obstruction to navigation. It was said at pages 64–65: "In the cause now under consideration the record discloses facts sufficient to show a maritime tort to which the general admiralty jurisdiction would extend save for the provisions of the state Compensation Act; but the matter is of mere local concern and its regulation by the State will work no material prejudice to any characteristic feature of the general maritime law. The Act prescribes the only remedy; its exclusive features abrogate the right to resort to the admiralty court which otherwise would exist." In *Alaska Packers Association* v. *Industrial Accident Commission*, 276 U. S. 467, 469, it was held that, even if the cause of action was within admiralty jurisdiction, the work was not "so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law. The work was really local in character." In *Sultan Railway & Timber Co.* v. *Department of Labor & Industries of Washington*, 277 U. S. 135, the injuries in question arose out of employment on a navigable river in assembling logs in booms for towage. Recovery was permitted, it being said at page 137 that "where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of general maritime law or interfere with its uniformity." These decisions have been rendered without relaxing the established general principle that torts, committed upon navigable waters and having direct relation to navigation and the uniformity of maritime law, must be governed exclusively by the principles of maritime law. Decisions of that nature are illustrated by *Gonsalves* v. *Morse Dry Dock & Repair Co.* 266 U. S. 171, *Robins Dry Dock & Repair Co.* v. *Dahl*, 266 U. S. 449, *Nogueira* v. *New York, New Haven & Hartford Railroad*, 281 U. S. 128, *John*

*Baizley Iron Works* v. *Span*, 281 U. S. 222, *Crowell* v. *Benson*, 285 U. S. 22, and *Spencer Kellogg & Sons, Inc.* v. *Hicks*, 285 U. S. 502.

It seems to us difficult to conceive of anything more local in its general nature than sweeping the deck of a scow used in the scavenger service of a great city, moving only when towed and then only a very short distance and within the territorial limits of the municipality. It does not appear that the deceased had any work directly connected with maritime affairs. We are of opinion, therefore, that the facts in the case at bar bring it within the principle declared in the decisions of the Supreme Court of the United States already quoted, to the effect that the decedent was engaged in a matter of mere local concern and that its regulation by the compensation act "will work no material prejudice to any characteristic feature of the general maritime law." The case at bar is distinguishable from *Dorman's Case*, 236 Mass. 583.

The decision of the board to the effect that the fall overboard was due to accident arising out of and in the course of his employment cannot be pronounced arbitrary and without evidence to sustain it. The decedent was seen to fall backwards from the deck into the water. On this point the case at bar is governed by *Uzzio's Case*, 228 Mass. 331, *Dow's Case*, 231 Mass. 348, *Fernald's Case*, 240 Mass. 567, and *Haskins's Case*, 261 Mass. 436.

There was testimony adequate to support the finding of the board that the unmarried daughter was totally dependent upon the earnings of her father. She testified that her father paid for her board and room and that there was no other source except him for the money to purchase her clothing. The case on this point falls within the class illustrated by *Herrick's Case*, 217 Mass. 111, and *Peterson's Case*, 270 Mass. 309.

*Decree affirmed.*