ARUNDEL CORPORATION ET AL. *v* CARRIE AYERS

[No. 29, October Term, 1934.]

570

*Decided November 22nd, 1934.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Parke, and Sloan, JJ.

*Robert D. Bartlett* and *C. Damer McKendrick,* for the appellants.

*Avrum K. Rifman,* with whom was *Stuart M. Yeatman* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The question here submitted is whether the alleged accident so happened as to bring it within the jurisdiction of the State of Maryland or within the federal jurisdiction.

John E. Ayers, a machinist's helper, was employed by the Arundel Corporation, the owner of a dredge named "Caracul," on which some repairs were being made preparatory to doing some dredging in Craighill Channel. The dredge drew about fourteen feet of water; did not run on its own power; it had to be towed. When Mr. Ayers was taken sick or complained of illness on August 21st, 1931, he was aboard the dredge at Sparrows Point, whence it had been towed because it was the only place about Baltimore where there was a crane capable of handling a tumbler which was to be put in the dredge. There is no dispute that the dredge could not float in any but navigable waters. It had been brought from Florida about a year before, and ever since had been lying idle in Baltimore Harbor, in what was called the "Flats," with nothing but a skeleton crew aboard, until called into service for work at Craighill Channel to dig mud. While at Sparrows Point the machinist saw that Ayers did not look well, asked him if he felt badly, and was answered, "Yes, I believe I got an attack of acute indigestion, something I have not had for a long time"; he was rubbing his chest. He was sent to the dispensary, where he died a few minutes after his arrival, the attending physicians diagnosing the case as *angina pectoris*.

On November 4th, 1931, his widow, Carrie Ayers, appellee, filed her claim for compensation with the Industrial Accident Commission on the ground that her husband had died as the result of an accidental personal injury sustained on the 21st day of August, 1931. Hearings were had by the commission on April 10th, 1933, and on July 22nd, 1933, at the request of the insurer, to determine the following issues: "Q. (1) Whether or not the death of John Ayers was the result of an accidental injury arising out of and in the course of his employment;

(2) Upon such other and further ground, both legal and equitable, as may appear at the hearing; (3) Whether the State Industrial Accident Commission has jurisdiction." On July 1st, 1933, the commission found for the employer on the third (jurisdictional) issue and disallowed the claim. No action was taken on the first and second issues. From this decision the claimant appealed to the Superior Court of Baltimore City, and it is from an adverse decision in that court that the employer and insurer appeal to this court.

There was but one issue submitted to the jury, and that was, "Has the State Industrial Accident Commission jurisdiction, under the Workmen's Compensation Act, to award compensation for the alleged injury to and death of the deceased employee, John E. Ayers?"

At the conclusion of the reading of all the evidence taken before the commission, the employer and insurer submitted three prayers for instructions, of which their first was granted, and their A and B, the two latter for instructed verdicts, were refused. The claimant submitted to the court seven prayers, of which the first and seventh were granted and the others refused. The only exception taken by the employer and insurer, appellants, is to the rulings adverse to them on prayers, which were:

*Employer's and Insurer's A Prayer.* The court rules as matter of law that from the undisputed evidence the alleged accident resulting in the death of John E. Ayers happened upon a vessel floating in navigable waters of the United States and that the motion to dismiss the appeal presented by the appellees is therefore granted. (Refused.)

*Employer's and Insurer's B Prayer.* The court instructs the jury that the so-called accident alleged to have resulted in the death of John E. Ayers, took place on territory outside of the jurisdiction of the State Industrial Accident Commission and the answer of the jury therefore to the issue before it must be 'No.' (Refused.)

*Claimant's First Prayer.* The court instructs the jury that if they find a verdict in favor of the claimant, Carrie

Ayers, the surviving widow of John Ayers, then their answer to 'Employer's and Insurer's Issue No. 1' should be 'Yes' and the verdict thereby be in favor of the claimant, Carrie Ayers. (Granted.)

*Claimant's Seventh Prayer.* The court instructs the jury that in passing on and weighing the evidence in the case relating to the employer's and insurer's Issue No. 1, the jury may take into consideration, in connection with all the other testimony in the case, the presumption that in the absence of substantial evidence to the contrary, the claim now under consideration comes within the provisions of the Maryland Workmen's Compensation Law, under which provisions the claim was filed on behalf of the surviving widow, Carrie Ayers, the claimant in this case. (Granted.)"

The day before the trial in the Superior Court, the employer and the insurer filed a motion to dismiss the appeal from the decision of the Accident Commission, for the reason that, from the undisputed evidence, the alleged accident resulting in the death of John E. Ayers happened upon a vessel floating in navigable waters of the United States, which said waters are without the jurisdiction of the State Industrial Accident Commission. No action was taken upon this motion until the conclusion of the case on appeal, when a prayer (A), instructing the jury to find for the employer and the insurer on the motion, was refused. On the record from the commission there was no dispute as to how, when, and where the alleged accidental injury occurred. Therefore, the question was one of law, and the motion, for the reasons hereinafter given, should have been granted. As it was, this was the only question submitted, the appellants contending that the question was one of law for the court, and the appellee that it was one of fact for the jury. The appellants rely upon the federal decisions in support of their contention, while the appellee depends on three decisions of this court and article 101, sec. 64, cl. (a), that in any proceeding for the enforcement of a claim for compensation it shall be presumed "that the claim comes within the provisions of this Article."

574

Under the Federal Constitution, the judicial ·power shall extend "to all Cases of admiralty and maritime Jurisdiction." Article 3, sec. 2. This provision was made effectual by section 9 of the Judiciary Act of 1789 (1 Stat. 76), whereby the District Courts of the United States were given "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction. * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it," and so continued in the Judicial Code, sec. 24 (3), 28 U. S. Code Ann., sec. 41 (3). The Supreme Court has frequently decided that no state can assume jurisdiction in admiralty or maritime matters, and this extends to workmen's compensation claims, unless the claim for compensation comes under the so-called "optional contracts." *Grant Smith-Porter Ship Co. v. Rohde*, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321; *State of Washington v. Dawson & Co.*, 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646; *Lahti v. Terry & Tench Co.*, 240 N. Y. 292, 148 N. E. 527.

In this state compensation is compulsory as to those engaged in "(8) The operation, within or without the state, including repair, of vessels other than vessels of other states or countries used in interstate or foreign commerce, when operated or repaired by the company" or in "(9) Shipbuilding, including construction and repair in a ship yard or elsewhere, not included in paragraph 8." Code, art. 101, sec. 32, as amended by Laws 1929, ch. 331, sec. 1. So far as it is concerned with the repair of vessels or other craft, the application of this statute depends upon their location in navigable or unnavigable waters when accidental injury occurs (*Atlantic Transport Co. v. Imbrovek*, 234 U. S. 52, 34 S. Ct. 733, 58 L. Ed. 1208; *Southern Pacific Co. v. Jensen*, 244 U. S. 206, 37 S. Ct. 524, 61 L. Ed. 1086; *Great Lakes Dredge & Dock Co. v. Kierejewski*, 261 U. S. 479, 43 S. Ct. 418, 67 L. Ed. 756), unless the employment is local in its character and has no direct connection with, or is merely incidental to, navigation or commerce. *Grant Smith-Porter Co. v. Rohde*, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321; *State*

*Industrial Commission of New York v. Nordenholt,* 259
U. S. 263, 42 S. Ct. 473, 66 L. Ed. 933; *Miller's Indemnity
Underwriters v. Braud,* 270 U. S. 59, 46 S. Ct. 194, 70 L.
Ed. 470; *Sultan Railway & Timber Co. v. Department of
Labor and Industries of ·Washington,* 277 U. S. 135, 48 S.
Ct. 505, 72 L. Ed. 820; *Toland's Case,* 258 Mass. 470, 155
N. E. 602; *Herbert's Case,* 283 Mass. 348, 186 N. E. 554.

The test of federal or state jurisdiction, as stated by
Mr. Justice McReynolds, in *State Industrial Commission
of New York v. Nordenholt Corporation,* 259 U. S. 263,
42 S. Ct. 473, 66 L. Ed. 933, and quoted in *Atlantic Coast
Shipping Co. v Royster,* 148 Md. 443, 445, 129 A. 668, is:
"When an employee working on board a vessel in navig-
able waters sustains personal injuries there, and seeks
damages from the employer, the applicable legal prin-
ciples are very different from those which would control
if he had been injured on the land while unloading the
vessel. In the former situation the liability of the em-
ployer must be determined under the maritime law; in
the latter, no general maritime rule prescribes the liabil-
ity, and the local law has always been, applied."

There is no pretense here, if there was an accidental
injury, that it occurred anywhere except on a vessel in
navigable water, wholly detached from and unconnected
with land, and that the dredge had not been operated nor
was it being repaired with a view to its operation in any
business of local concern. What the claimant relies on is
the statement in two Maryland cases, *Taylor v. Ramsay
Co.,* 139 Md. 113, 114 A. 30, and *Baltimore Dry Docks &
Shipbuilding Co. v. Hoffman,* 142 Md. 73, 120 A. 227,
that the question of jurisdiction is a mixed question of law
and fact, and that, therefore, a verdict cannot be directed
for the one upon whom the burden rests to establish the
fact. This proposition has been declared so many times,
from *Charleston Ins. Co. v. Corner,* 2 Gill, 426, to *Smith
v. Whitman,* 159 Md. 485, 150 A. 856, that it is not neces-
sary to argue it here. But that rule has no application
where the question raised is one of jurisdiction involving
the right of a state court to proceed to a trial of the facts,

where the facts upon which jurisdiction is denied are not disputed, for, if the court has no jurisdiction, it stops the proceeding; it has no right, power, or authority to go on and determine the rights of the parties; then and there, so far as that controversy is concerned, it ceases to function as a court. The presumption "that the claim comes within the provisions" of article 101 (section 64) can have no weight when the question is one of jurisdiction, as the Legislature cannot confer on a jury the power and authority which the State itself does not assume. In the case of *Taylor v. Ramsay Co., supra,* the facts upon which jurisdiction would or would not rest in the state court were disputed, and all that was or could be meant by the statement that jurisdiction was a mixed question of law and fact is that, when there are two sets of facts on which jurisdiction depends, it becomes a question of fact for a jury as to which set of facts will confer jurisdiction. Otherwise, it becomes a question of law for the court. The decision, however, in the case of *Taylor v. Ramsay Co.* was that the jurisdiction of the commission could not be attacked in a collateral proceeding. The facts are not so stated in the opinion in *Baltimore Dry Docks & Shipbuilding Co. v. Hoffman* as to show whether there was a dispute, but the rule was broadly stated, on the authority of *Taylor v. Ramsay Co.,* that the question of jurisdiction is a mixed question of law and fact, and that, as the defendant raised the question of jurisdiction, the jury could not be instructed to find for it. In view of the conclusion, if that case is to be followed, we must assume that there was a controversy as to the facts necessary to determine the jurisdiction.

The third case was *Atlantic Coast Shipping Co. v. Royster,* 148 Md. 443, 129 A. 668, in which the opinion was written by Judge Urner. In that case this court, applying the test of the opinion by Mr. Justice McReynolds, in the *Nordenholt* case, supra, decided that, upon the undisputed facts in evidence, the Industrial Accident Commission had jurisdiction. The fact there was that the claimant's decedent had been, in the course of his employment,

knocked off the dock where he was working into navigable waters, and drowned. There was no prayer offered by the defendant for an instructed verdict, but it did offer what was its equivalent, and that was that, if the jury found the facts as there stated, their verdict should be for the defendant, and it thus raised the question of jurisdiction. If that prayer had been granted, which it was not, the claimant could not have argued the case, because any argument would have been in the teeth of the instruction.

The undisputed facts in this case show the claim, if any, to be federal and not local, and the jury should have been so instructed, or the motion to dismiss the appeal from the Accident Commission granted, either result being the same.

Employer's and insurer's issue (No. 1) contained a question of law, but, as it was not objected to, it is not considered.

*Judgment reversed.*