## FRANKEL v. BETHLEHEM–FAIRFIELD SHIPYARD, Inc.

### No. 1610.

District Court, D. Maryland.

July 18, 1942.

I. Duke Avnet, of Baltimore, Md., for plaintiff.

Robert E. Coughlan, Jr., of Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the plaintiff sues at law under the Jones Act, 46 U.S.C.A. § 688, for personal injuries received in the course of his duties as an employe of the defendant, the Bethlehem-Fairfield Shipyard, Inc., a Maryland corporation, in the construction of one of the new Liberty ships, the Patrick Henry, after she had been launched but before her completion. The particular Act of Congress referred to, enacted in 1920, authorizes such a suit by "any seaman" and provides for a cause of action in accordance with the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The defendant has filed a motion to dismiss the suit on jurisdictional grounds because, as contended, the plaintiff was not a "seaman" within the meaning of the Act, and was not engaged in a maritime employment at the time of his injury and therefore his exclusive remedy is under the Maryland Workmen's Compensation Law (Flack's Ann.Code of Md. Art. 101, § 1 et seq.). The Jones Act is applicable only in cases of maritime torts where admiralty would have jurisdiction. Panama R. Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748; Benedict on Admiralty, 6th Ed., Vol. 4, pp. 201, 202.

From the papers in the case and the agreement of counsel for the parties as they developed in the argument on the motion, the relevant and controlling facts are admittedly as follows:

The defendant is a Maryland corporation engaged largely in shipbuilding. At the time of the injury to the plaintiff he was employed by the defendant as a "handy man" on one of the new Liberty ships, being built by the defendant. This ship had been launched and was lying in navigable waters in the Port of Baltimore, Maryland, *but had not been completed.* The plaintiff was engaged in installing machinery and

equipment in the ship and was particularly occupied at the time of his injuries in assisting in installing dynamos in the engine room of the vessel. He alleges that his injury was due to the negligence of the defendant in failing to provide adequate protection and equipment on the platform on which he was working, in consequence of which he fell therefrom and was permanently injured. The accident occurred on or about October 14, 1941. Thereafter he filed a claim with the Maryland State Industrial Accident Commission claiming the benefits of the State Workmen's Compensation Act. The Commission has passed what is said to be an ex parte formal order awarding him compensation at the rate of $20 per week accounting from November 2, 1941; but it is said that no adversary hearing has yet been held by the Commission in the case, and the plaintiff has not yet accepted any compensation. The defendant carries workmen's compensation insurance as required by the Maryland statute. The suit in this case was filed by the plaintiff on May 28, 1942.

The question of jurisdiction thus presented is another of a long series of cases which require for their decision the determination of the boundary line between the jurisdiction of the federal courts in the matter of maritime torts, and the exclusive features of State compensation laws. It is not disputed that in terms the Maryland statute expressly covers the extra-hazardous employment of shipbuilding. Maryland Code, Art. 101, § 33, subsections (8 and 9), read as follows:

"(8) The operation, within or without the state, including repair, of vessels other than vessels of other states or countries used in interstate or foreign commerce, when operated or repaired by the company.

"(9) Shipbuilding, including construction and repair in a ship yard or elsewhere, not included in paragraph 8."

The remedy afforded by the State statute is exclusive where it is applicable. Sec. 14; Victory Sparkler & S. Co. v. Francks, 147 Md. 368, 375, 128 A. 635, 44 A.L.R. 363; Arundel Corp. v. Ayers, 167 Md. 569, 574, 175 A. 586; Kramer v. Globe Brewing Co., 175 Md. 461, 470, 2 A.2d 634. It is therefore clear that the Maryland statute covers the case and this court has no jurisdiction in admiralty unless the circumstances show a situation which under federal law by virtue of the Constitution

and statutes as determined in judicial decisions forbids the application of the State statute. The general test whether a tort is maritime, and therefore whether within the admiralty jurisdiction, is determined by the place where it occurs, that is, on navigable waters or on land. If the former, ordinarily admiralty has jurisdiction, although there are judicial intimations that the nature of the tort must also have a maritime flavor. Robinson on Admiralty (1939) p. 70. The Constitution, Art. 3, § 2, provides that the "judicial Power shall extend * * * to all Cases of admiralty and maritime Jurisdiction". Congress has implemented the constitutional grant of power by providing, 28 U.S.C.A. § 41(3), that the District Courts of the United States shall have jurisdiction "of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants *for compensation for injuries to or death of persons other than the master or members of the crew of a vessel their rights and remedies under the workmen's compensation law of any State, District,* Territory, or possession of the United States, *which rights, and remedies when conferred by such law shall be exclusive; * * *. The jurisdiction of the district courts shall not extend to causes arising out of injuries to or death of persons other than the master or members of the crew, for which compensation is provided by the workmen's compensation law of any State,* District, Territory, or possession of the United States."

Congress has further provided, 28 U.S.C.A. § 371, that the jurisdiction so conferred upon the District Courts shall be exclusive in. "all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, *and to claimants for compensation for injuries to or death of persons other than the master or members of the crew of a vessel, their rights and remedies under the workmen's compensation law of any State,* District, Territory, or possession of the United States."

The italicized portion of these statutes was added by amendments in 1917 and 1922, which obviously were intended to give effect to the several state compensation laws; but it is important to note that the Supreme Court has held that

the amendments were unconstitutional because they invalidly delegated to the States the power to legislate with respect to admiralty jurisdiction, thus tending to impair the required uniformity of federal admiralty law; and with respect to the common law remedies referred to, state compensation statutes are not included therein, as they do not constitute remedies known to the common law. Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900; Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834, 11 A.L.R. 1145; State of Washington v. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646.

But, despite these decisions, there has developed in the opinions of the Supreme Court a line of cases, seemingly including the instant case, where the local state compensation laws have been held applicable to the exclusion of the admiralty jurisdiction. Illustrative of these are Grant Smith-Porter Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008; State Industrial Comm. of New York v. Nordenholt Co., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933, 25 A.L.R. 1013; Millers' Indemnity Underwriters v. Braud, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470; United States Cas. Co. v. Taylor, 4 Cir. 64 F.2d 521, certiorari denied 290 U.S. 639, 54 S.Ct. 56, 78 L.Ed. 555; Arundel Corp. v. Ayers, 167 Md. 569, 574, 175 A. 586. Such cases involve factual situations said to be purely "local" matters, that is, so limited in their operation that giving effect to the local state compensation law would not interfere with the uniformity of the general maritime law in interstate and foreign commerce, and would not be prejudicial to the characteristic features of the maritime law. London Guarantee & Acc. Co. v. Industrial Acc. Comm., 279 U.S. 109, 125, 49 S.Ct. 296, 73 L.Ed. 632. The word "local" does not signify locality only in the ordinary sense, and does not exclude cases where the torts or injuries occur on navigable waters, and not on land (which is the frequently stated test as to whether a tort is within the admiralty jurisdiction). "The 'local' aspect of the matter has been made to depend on the character of the injured man's work." Robinson on Admiralty (1939) p. 101.

In this case the plaintiff was an employe of a shipbuilding company engaged in the completion of a ship that had been launched and was lying in navigable waters but was not sufficiently completed for use in navigation. It is well settled in this country that the work of building a ship is not a maritime contract even though the ship may have been launched. Until a ship has been completed and is put into commission for navigation, the work of its construction is not maritime in nature. Robinson on Admiralty (1939) 162–165, 170, 171; People's Ferry Co. v. Beers, 20 How. 393, 15 L.Ed. 961; Thames Towboat Co. v. The Francis McDonald, 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245.

Whether the state or federal law controls in the situation that we have here has been specifically considered in a number of cases involving parallel facts. In Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 158, 66 L.Ed. 321, 25 A.L.R. 1008, Rohde, a carpenter, received injury while at work on a partially completed vessel lying at a dock in navigable waters after having been launched. He sued the shipbuilding company in personam in admiralty. The respondent defended on the ground that the State of Oregon had a compensation statute which provided the exclusive remedy. It was held that while ordinarily a tort on navigable waters was within the admiralty jurisdiction, and the mere fact that the ship had not been completed did not necessarily defeat the admiralty jurisdiction generally, nevertheless, as the nature of the libelant's general employment and his activities at the time of the injury had no direct relation to navigation or commerce, the local law applied. Mr. Justice McReynolds, writing the opinion for the unanimous court, said: "The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this Court that it must now be treated as settled."

But in view of the particular facts it was also stated—"Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations."

That case was decided January 3, 1922. Hoof v. Pacific American Fisheries, 9th Cir., 279 F. 367, 369, was decided only about

246 a month later. The facts were quite similar. There the injured person was a watchman for and was injured on a vessel lying in navigable waters which had been launched but not completed. It was held that admiralty had jurisdiction despite the exclusive nature of the Workmen's Compensation Act of the State of Washington. The decision was put upon the general rule that admiralty has jurisdiction of torts occurring on navigable waters. The court said: "In the present case the injury to the plaintiff was connected with a vessel in maritime waters, and occurred while the plaintiff was performing services for the vessel. In order to support jurisdiction in admiralty in the case of tort resulting in personal injury, it is not necessary that the injured person shall have had a maritime contract with the owner or with the vessel."

The decision was not based on differences between the compensation laws of Oregon and Washington respectively. The result seems inconsistent with the "local" doctrine applied by the Supreme Court in the Grant Smith-Porter case. In the body of the opinion in support of the general basis of the decision, it was said in the Hoof case: "In Rohde v. Grant Smith Porter Co., D.C., 259 F. 304, it was held that the libelant might recover in personam against the owner for personal injuries sustained while he was doing carpentry work on a vessel which was lying in navigable waters." See, also, Rohde v. Grant Smith-Porter Ship Co., D. C., 263 F. 204. The reference is, of course, to the Rohde case in the District Court. On appeal in the latter case the same 9th Circuit certified two questions to the Supreme Court which were answered in ·257 U.S. 469, 478, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008. The first question was (1) Is there jurisdiction in admiralty because the alleged tort occurred on navigable waters; (2) Is libelant entitled because of his injury to proceed in admiralty against respondent for the damages suffered? The court answered both questions—Yes. In concluding its opinion in the Hoof case, the 9th Circuit said: "The very recent decision of the Supreme Court in Grant Smith-Porter Ship Co. v. Herman F. Rohde, 257 U.S. 469, 42 Sup.Ct. 157, 66 L.Ed. 321 [25 A.L.R. 1008], we accept as authority for the proposition that the jurisdiction in admiralty extends to the case." Thus apparently the court in the Hoof case did not fully consider the effect of the affirmative answer given by the Supreme Court to the second

question, as a result of which the state compensation law was there held applicable and exclusive.

The same facts of an accidental injury occurring on a launched but not completed ship lying in navigable waters were presented to the Circuit Court of Appeals for this Fourth Circuit in United States Casualty Co. v. Taylor, 64 F.2d 521, 524, opinion by Judge Soper. The exact question there was whether the injured workman was entitled to compensation under the federal Longshoremen's and Harbor Workers' Act of 1927, 33 U.S.C.A. §§ 901–950. Section 903(a) of the Act provides: "Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any drydock) *and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law.*" (Italics supplied.) In the opinion the historical and legislative background of the Longshoremen's Act is quite fully stated and the court reached the conclusion that the case did not come within the coverage of the Longshoremen's Act, because the nature of the case was such that it might validly have been provided for by a state compensation law. After reviewing the relevant Supreme Court cases including the Rohde case, Judge Soper [64 F.2d 525] concluded: "These cases make it clear that a state has the power to provide compensation for injuries suffered by a workman employed in the construction of a vessel afloat upon navigable waters."

Another case where the injury occurred on a launched but not completed ship lying in navigable waters is Zahler v. Dept. of Labor, 125 Wash. 410, 419, 217 P. 55; and there also the state compensation law was given exclusive effect.

In our present case the controlling facts are precisely the same as stated in the opinion in the Supreme Court in the Rohde case with the single exception that the force of the State law was there optional in the sense that it became inapplicable if both employer and workmen notified the proper state authority that they did not wish it to apply to them; and no such notice had been given by the parties involved. As to this, Justice McReynolds observed in the opinion: "The injury was suffered within a State whose positive enactment prescribed

an exclusive remedy therefor. And as both parties had accepted and proceeded under the statute by making payments to the Industrial Accident Fund it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law." In later cases in the Supreme Court likewise involving the "local" doctrine, under which the state compensation laws control, emphasis in argument of counsel has been placed on this particular feature of the Rohde case as an important and distinguishing factor leading to its result. But it is made clear in the opinions in the later cases (many of which were written by Mr. Justice McReynolds) that this particular feature of the Rohde case was not in itself an essential condition of the decision. Thus in Millers' Indem. Underwriters v. Braud, 270 U.S. 59, 64, 46 S.Ct. 194, 195, 70 L.Ed. 470, where the state compensation statute was given exclusive effect, although admiralty might otherwise have had jurisdiction, Mr. Justice McReynolds in reviewing the Rohde case, said: "Stressing the point that the parties were clearly and consciously within the terms of the statute and did not in fact suppose they were contracting with reference to the general system of maritime law, we alluded to the circumstance, *not otherwise of special importance,* that each of them had contributed to the industrial accident fund. * * * In the cause now under consideration the record discloses facts sufficient to show a maritime tort to which the general admiralty jurisdiction would extend save for the provisions of the state Compensation Act; but the matter is of mere local concern and its regulation by the State will work no material prejudice to any characteristic feature of the general maritime law. The act prescribes the only remedy; its exclusive features abrogate the right to resort to the admiralty court which otherwise would exist." (Italics supplied.) And again in Employers' Liability Assurance Corp. v. Cook, 281 U.S. 233, 236, 50 S. Ct. 308, 309, 74 L.Ed. 823, where under the facts the admiralty jurisdiction was held exclusive and the State Compensation Law not effective, Mr. Justice McReynolds again said for the court: "The unloading of a ship is not matter of purely local concern as we have often pointed out. Under the circumstances disclosed, the state lacked power to prescribe the rights and liabilities of the parties growing out of the accident. *The fact that the Compensation Law of the state*

*was elective in form does not aid the respondents.* The employer did not surrender rights guaranteed to him by the federal law merely by electing to accept one of two kinds of liability in respect of matters within the state's control, either of which she had power to impose upon him." (Italics supplied.) And in Baizley Iron Works v. Span, 281 U.S. 222, 230, 232, 50 S.Ct. 306, 307, 74 L.Ed. 819, again upholding the admiralty jurisdiction against a state law under the particular facts, Mr. Justice McReynolds said: "In Grant Smith-Porter Co. v. Rohde, supra, claimant when injured was working upon an *incompleted* vessel—a thing not yet placed into navigation and which had not become an instrumentality of commerce * * * Repairing a *completed* ship lying in navigable waters has direct and intimate connection with navigation and commerce, as has been often pointed out by this court." (Italics supplied.)

It also seems clear enough from the reasoning in the opinion of United States Casualty Co. v. Taylor, supra, that the applicability of exclusive state compensation laws is not dependent upon the inclusion therein of the optional feature referred to in the Rohde case. And in Robinson on Admiralty, p. 104, the "local" doctrine is thus briefly summarized: "Given a maritime injury, ex loci, the subsequent history of the 'local' exception to the doctrine of the Jensen case has become a mere matter of including the man's job in the maritime class or excluding it from the class". Counsel for the plaintiff here argued that the Taylor case misinterpreted the Rohde case in that in the latter the employe's work was held to be maritime although his contract with the employer was non-maritime; but that the Taylor case interpreted Rohde's employment as not maritime. The argument itself seems to be a misinterpretation of the Rohde case because, as has been previously pointed out, Mr. Justice McReynolds there said: "the contract for constructing 'The Ahala' was nonmaritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment, nor his activities at the time had any direct relation to navigation or commerce." In the Taylor case the opinion in considering the nature of similar work by the injured employe said: "He was engaged upon navigable waters in the completion of a new ship launched but not quite finished or placed

in navigation as an instrumentality of commerce. Such work is not maritime in the accepted meaning of that term." I fail to find therein any misinterpretation of the Rohde case. But however that may be, the Taylor case, to the extent that the reasoning is applicable here, is imperative authority for this court.

The clear conclusion from this review of the controlling judicial decisions is that, under the facts of the instant case, the so-called "local" exception rule applies and the state compensation law is therefore applicable, to the exclusion of ordinary jurisdiction in admiralty; and the suit must therefore be dismissed. I find nothing to defeat this conclusion in the last Supreme Court case which has dealt with the subject matter, Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184. In that case, under the facts accepted by the court as the basis for its decision, the Longshoremen's and Harbor Workers' Act was held, as against a possible state compensation law, to cover the case of an employe (generally employed as the janitor of a store) drowned from a motor boat in a navigable river, while being demonstrated for account of the employer. The court thought the employe was at the time engaged in maritime work; but the opinion of the court does not question the doctrine of the Rohde case. And indeed it may possibly be thought significant that in the opinion there is possibly an intimation that the constitutional question in the Jensen case may be hereafter further considered by the court. Throughout the line of constitutional cases of which the Jensen case was the forerunner, there has persisted the dissent of a number of the Justices of the Supreme Court. In both the Jensen case and Knickerbocker Ice Co. v. Stewart, supra, four Justices dissented; and in Washington v. Dawson, Justices Holmes and Brandeis reiterated their dissents. And still later, in Baizley Iron Works v. Span, supra, and Employers' Liability Assurance Corp. v. Cook, supra, where the admiralty jurisdiction was upheld against state compensation laws, Justices Stone, Holmes and Brandeis again dissented. In the latter case Mr. Justice Stone (now Chief Justice) said (page 237 of 281 U.S., page 310 of 50 S.Ct., 74 L.Ed. 823): "The present case arose before the effective date of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 424, (33 U.S.C.A. §§ 901–950). But the remedies given by that Act are withheld where recovery may be had under local compensation acts, and not all persons engaged in unloading a vessel are entitled to recover under it, even though without remedy under local compensation laws. See section 3(a), 33 U.S.C.A. § 903(a)". See, also, the concurring opinion of the same Justices in Northern Coal & D. Co. v. Strand, 278 U.S. 142, 147, 49 S.Ct. 88, 73 L.Ed. 232. On the other hand, the Rohde case was decided by a unanimous court and has been frequently reviewed and restated with approval in later cases, and, so far as I have noted, has not been questioned in any later case either in the opinions of the court or in dissenting opinions. In the Parker case, supra, at page 250, of 314 U.S., at page 225 of 62 S.Ct., 86 L.Ed. ——, Mr. Justice Black, after referring to the Longshoremen's Act and the Jensen case, said: "The field in which a state may not validly provide for compensation must be taken, for the purposes of the Act, as the same field which the Jensen line of decision excluded from state compensation laws. Without affirming or rejecting the *constitutional* implications of those cases, we accept them as the measure by which Congress intended to mark the scope of the Act they brought into existence." It might have been thought that the local field of operation previously open to the state compensation laws had been closed and occupied by the Jones Act of 1920, which, although not a compensation act, was a statute of general application, modifying the maritime law, and greatly liberalizing the rules for the recovery of damages by seamen negligently injured in the course of their employment. And at first blush it might seem that color to this view had been given by the decision of the Supreme Court in Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686, where it was held that the death clause of the Jones Act superseded the state death acts which had previously been given effect in Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210, and Great Lakes D. & D. Co. v. Kierejewski, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756. But there is a sound distinction between the nature of the state death acts and state compensation acts, by reason of which the former, although sometimes referred to as of "local" concern only, were not a true exception to the general admiralty jurisdiction, as the latter in their permissible field were. The distinction lies in the considera-

tion that the state death acts were really in the nature of a common law remedy, and therefore in accordance with the provisions in the original Judiciary Act, section 9, 1 Stat. 76, which in giving jurisdiction to the District Courts in admiralty added "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." This distinction is clearly made by Chief Justice Taft in London Guarantee & Acc. Co. v. Industrial Acc. Comm., 279 U.S. 109, 119, 49 S.Ct. 296, 73 L.Ed. 632. That the Jones Act has not closed the field for the state compensation laws under such circumstances as existed in the Rohde case is also apparent from the congressional recognition furnished by the exception in section 903 of the Longshoremen's act quoted supra, and the opinions of Mr. Justice Black in the Motor Boat Sales case and of Judge Soper in United States Casualty Co. v. Taylor, supra.

The dismissal of the present suit is also required because the plaintiff was not a "seaman" within the meaning of the Jones Act, because, like Rohde, he was not engaged in maritime employment. See, also, London Guarantee & Acc. Co. v. Industrial Acc. Comm., 279 U.S. 109, 121, 49 S.Ct. 296, 73 L.Ed. 632. Prior to the passage of the Longshoremen's Act in 1927 the courts gave a very liberal interpretation to the term "seaman" including therein, for instance, a laborer acting as a stevedore where his injury occurred on a completed vessel. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157. But the coverage of the Longshoremen's Act included all maritime employes except the "master or member of a crew of any vessel", 33 U.S.C.A. § 903(a) (1), and, being an exclusive compensation act, now necessarily limits the scope of "seaman" in the Jones Act to a maritime employe who can be considered the master or member of the crew of a vessel. Subject to this limitation the rule of interpretation of who is a seaman is still liberal. Warner v. Goltra, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254; Nogueira v. New York, N. H. & H. R. Co., 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754; South Chicago C. & D. Co. v. Bassett, 309 U.S. 251, 257, 60 S.Ct. 544, 84 L.Ed. 732; and cases collected in Robinson, Admiralty, p. 318 et seq. Thus if the tortious injury occurs on a vessel completed for navigation and lying in navigable waters, any member of the crew, including the master and others forming the ship's complement of personnel, without respect to his particular occupation, would seem to be included in the term "seaman". Warner v. Goltra, supra. But, as the vessel in this case had not been completed and the plaintiff was an employe in work classed as non-maritime, it is not possible to classify him as a "seaman", as his duties had no direct relation to navigation.

Where the controlling facts are uncertain or even somewhat obscure, I think it the better practice not to undertake to decide important questions of law on motions to dismiss, but only after final hearing on the merits. But there is here no uncertainty either of the facts or of the law, and moreover it would seem important to the plaintiff to have a prompt determination of the jurisdictional question. His accident occurred nine months ago and further avoidable delay in final adjudication in the proper jurisdiction seems undesirable. In this connection it seems appropriate to observe that under the existing statutory and case law with respect to injuries to workmen in and about ships, there is a possible regrettable uncertainty as to the particular remedy to be sought by the injured man. The variety of possible remedies is well summarized in Benedict on Admiralty, 6th Ed. (Knauth), Vol. I, § 69, "The evils of the present system * * * are two: the injured man frequently has an option between at least two of the five remedies provided by the courts or by statute in the shape of a common law suit, a Jones Act suit, an admiralty law suit, a local compensation proceeding or a federal compensation proceeding, and it occasionally happens that a man is denied a remedy by each of the tribunals or agencies to which he applies. There is no necessary coordination between the possible view of a State court that a man ought to have an admiralty remedy and the possible view of the Federal court that the man ought to have a compensation remedy. * * * The multiplicity of remedies and the independence of the courts and commissions having jurisdiction causes a good deal of difficulty."

The existing difficulty is understandable from the recent history of legislation intended to aid the maritime worker. Until comparatively recent times the principal remedy available to seamen, using the term in the broad sense, was "maintenance and cure" as an essential admiralty doctrine; but with some common law remedy in particular cases. Indemnity for death in state

ports was not thus included, but some years ago state statutes providing therefor were enacted, and were given effect by the Supreme Court until superseded by the Jones Act. And, as we have seen, state compensation statutes were also given effect in some cases under the so-called "local" rule. But as these statutes were constitutionally operative in a restricted area only the need was felt for a federal compensation statute which would be uniformly applicable for those engaged in maritime employment. To meet this need Congress in 1927 passed the Longshoremen's Act which, in the course of its legislative history, was at one time proposed to cover all maritime workers, but finally excluded from its coverage the "master or member of a crew of any vessel". As noted in the opinion of Mr. Justice Cardozo in Warner v. Goltra, 293 U.S. 160, 55 S.Ct. 48, 79 L.Ed. 254, "The exclusion was at the request of seamen who notified the committee in charge that they preferred the remedy for damages under the act of 1920 [Jones Act] to the benefits that would be theirs under a system of workmen's compensation." The Act, 33 U.S.C.A. § 903, also limited its coverage to cases where "recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law". Much of the maritime employe's difficulty in choosing the proper jurisdiction would have been avoided if these exceptions had not been included in the Longshoremen's and Harbor Workers' Act. In modern times social philosophy runs strongly to the support of compensation acts in substitution for prior common law remedies even though much liberalized by statutory amendments. Perhaps it is a fair appraisal of the recent judicial decisions that they tend to liberally uphold and apply the Longshoremen's Act where possible as against state compensation laws, but also to uphold the latter where the admiralty jurisdiction does not clearly forbid. It has not been suggested that the case of the present plaintiff is covered by the Longshoremen's Act, and the Taylor case, supra, in this Circuit is a clear authority to the contrary. In fact the plaintiff here first invoked the state compensation law but, without any hearing on the merits before the State Commission, and apparently without dismissing or definitely repudiating that case, has invoked the Jones Act in his present suit. It is not suggested that he is estopped or bound by the state proceeding if he is otherwise entitled to sue

under the Jones Act. But the fact seems to indicate that the delay that has so far occurred in adjudicating the merits of his claim is due to his own election rather than to any delay caused by the employer.

Counsel may submit the appropriate order for dismissal in due course.