# Hays *versus* Paul.

1. A party is entitled to a full, fair and explicit answer to his prayer for instruction, if pertinent; but where the evidence requires it, the court should make such qualification as will adapt the instruction to the facts, and enable the jury to make the necessary discrimination and decide the cause correctly.

2. When a tug has a flatboat in tow, it is the duty of the flatboatman to aid in managing and conducting the *tow* and to obey the directions of the pilot of the tug; but if sufficient orders are not given by the pilot, or not given in time, negligence may be imputed to the master of the tug, as well in this as in any other respect.

3. When a steam-tug takes a boat in tow, undertakes its management and control of it and its crew, and assumes to give the orders necessary, the time and sufficiency of these orders fall within the duty of the tug.

4. If the officers of a tug, with a boat in tow, give the boat insufficient orders, or give them too late, it is negligence on part of the tug.

5. It is the business of one who uses a tug for towing to know the capabilities of his tug and its practical effects upon the boats in tow, including the power of his paddles, the influence of the current, the swell produced and probable distance it would reach.

6. If the character and loading of the tow is visible and open to all, and her depth in the water and everything in regard to her is patent to all, it would be negligence on the part of the towboat captain to undertake to tow such a flat if too heavily loaded.

7. The towboat captain is the best judge of what his towboat can do, and if applied to to tow a craft too heavily loaded, or otherwise unfit to be towed, he should decline, or apprise the owner, and make special terms as to the risk.

8. Towing of boats is one of those undertakings which imply sufficient knowledge and skill to perform it safely.

9. A party employed in any position of trust over the property of others, is held to the same care and attention that he would exercise over it were the property his own.

[Hays v. Paul.]

ERROR to the Court of Common Pleas of *Allegheny county.*

Paul, the plaintiff below, was the owner of flatboats, and was in the business of freighting metal from furnaces on the Allegheny river to Pittsburgh. He had brought down two boats, each loaded with one hundred and seventy tons of metal belonging to Alexander Laughlin, of Pittsburgh, and landed the boats on the river above the upper bridge, on the Pittsburgh side. Hays, the defendant below, owned the steam towboat, Jacob Painter, and was employed by Paul to tow his boats one to Brownstown and the other to South Pittsburgh. Hays undertook the job, saying, that " he could drop the two around the same as one ; could take two as safe as one." The towboat was placed between the two flatboats. The hands of the flatboats were directed by " the steamboat" to stand on the front of the flatboats, and, when told, to pull. As the boats went through the bridge the hands of the flatboat saw they would strike—but they did not dare to pull till they were told, as the steamboat had the control. As the boats came to the pier, the flatboat hands were told to pull, and did so ; but before they got half a stroke the right-hand boat struck the pier, glanced off and struck the steamboat, broke the side of the left-hand flatboat, and the water commenced pouring in ; this boat sunk and was lost. At some time between the striking and the sinking the flatboat hands escaped from the boat.

On the trial the defendant submitted the following points :—

1. That the owners of a steamboat employed in towing boats are not common carriers, and are only bound to take such reasonable degree of care and attention, that the owner of the boat or raft towed shall incur no damage or loss through the negligence or default of the owner of such steamboat or of his servant.

And the defendant in this case can only be held liable for not using such a reasonable degree of care and attention as is mentioned in this point.

2. That in actions for negligence the burden of proof is upon the plaintiff, and the law will not presume it for him.

3. That the plaintiff in this case was bound to use ordinary and reasonable care and diligence for the preservation of the property towed by the defendant's steamboat ; and that he is not entitled to recover in this action, if his own negligence or that of his servants contributed to or was the cause of the destruction of or injury to said property.

4. That if the injury and damage alleged and charged in the plaintiff's declaration were occasioned by the mutual negligence of both the plaintiff and defendant, the plaintiff is not entitled to recover damages for the loss which he has sustained.

5. That it is an undoubted rule that for a loss from mutual negligence neither party can recover in a court of common law.

6. That in towing said boats the defendant was only bound to

[Hays *v.* Paul.]

exercise ordinary care and diligence, and that if he exercised ordinary care and diligence in towing them, he is not liable for the loss which arose from the accident in this case.

7. That in a case of this kind the plaintiff cannot recover, even though the defendant was in fault, if he or his servants were guilty of any want of care or diligence, and that want of care or diligence contributed to the loss.

8. That it was the duty of the plaintiff and his hands to aid in managing and conducting the flotilla, and to obey the directions of the defendant and his pilot in doing so ; and if they were directed by the pilot to go to the oars and remain there, and they left them after rounding out, and their absence from the oars contributed to the loss, the plaintiff cannot recover, even though the defendant on his part may not have exercised proper care and diligence.

9. If the plaintiff and his hands were at the oars when the pilot called to them to pull to the left, and instead of obeying the order they dropped the oars and ran away, and their doing so either occasioned or contributed to the loss, it was such misconduct on their part as will prevent the plaintiff from recovering.

10. If the boats were so deeply loaded that the swell produced by the wheel of the towboat in backing threw the water into them at the stern over the top of the boards, and that either occasioned or contributed to the loss, the plaintiff cannot recover.

11. That if the jury believe the metal boat was overloaded, either with the metal, or with it in conjunction with the water that is proved to have been in her before the accident happened, and that the overloading either occasioned or contributed to the loss, the plaintiff cannot recover.

The court (Mellon, A. J.) charged as follows :—

" The chief question involved in this case regards *negligence.* The plaintiff imputes *culpable* negligence to the defendant in the management of his towboat, and in performance of the business for which he had employed him, and to this negligence the plaintiff attributes the loss of one of his metal boats and other injuries.

" Has the evidence disclosed such negligence, and if so, is there any other element in the evidence which prevents a recovery by the plaintiff notwithstanding ?

" All persons in the discharge of any work or duty, where the persons or property of others are involved, are bound to the exercise of reasonable precaution to prevent injury, and ordinary care and skill to secure safety to those whose persons or property are in their power.

" By the application of this principle to the defendant, he was bound to the exercise of due and reasonable care, skill, judgment and diligence to preserve the plaintiff's property whilst under his control.

[Hays *v.* Paul.]

" The degree of care, skill and diligence which the law requires, is such as would reasonably be expected of a careful, prudent man in the management of his own affairs under similar circumstances —neither more nor less.   If the conduct of the defendant and his employees on the towboat come up to this standard, it is all the law requires of them.   No one is liable for the consequences of unavoidable accidents or innocent mistakes.

" There is another principle in regard to this question of negligence that may be mentioned here.   That is, the effect where there is mutual negligence.   If there was negligence on both sides, by the plaintiff and his employees as well as by the defendant and his employees, which contributed to the loss, then there can be no recovery by the plaintiff; but I shall notice this further when the defendant's points come to be answered.

" Another qualification is this; the care, skill and diligence required has relation to the work to be done.   What would be extraordinary care and caution under some circumstances, might amount to no more than ordinary or common care and caution under others.   Thus, for example, the care and caution to be exercised by a towboat pilot with a heavy tow in a part of the river obstructed with bridge piers might be no more than common, and such as would be usually exercised by all prudent pilots in the same situation, but would amount to extraordinary care and caution if observed in an open river with an easily managed tow. The same degree of care and diligence which .might be regarded as proper and reasonable in an open river with a convenient tow, and in the exercise of which no liability would attach in case of accident, might amount to culpable negligence' with an unwieldy tow in a dangerous part of the river.

" This consists with the rule I have laid down, viz., that the defendant is to be held to the same line of conduct ordinarily to be expected of a prudent, reasonable man in regard to his own property under similar circumstances.   A party employed in any position of trust over the property of others is held to the same care and attention that he would exercise were the property his own ; but in ascertaining what that care and attention is which he would exercise were the property his own, we must measure him by other prudent and reasonable men as the standard.   We must compare his conduct with what we may conceive careful men would have done under similar circumstances.   If he comes up to that standard it is sufficient, if he falls short of it in care, diligence or skill in the business he had undertaken and a loss has ensued, he would be responsible.

" With these general remarks I shall proceed to answer the defendant's points.

" The defendant's points to the eighth inclusive, affirmed.

[Hays *v.* Paul.]

"I add this explanation to my affirmance of this eighth point, viz.: It was the duty of the plaintiff and his hands to aid in managing and conducting the flotilla, and to obey direction, &c., but they were under the orders and direction, for this purpose, of the captain or pilot of the towboat, if the towboat captain or pilot assumed their direction and control; and if sufficient orders were not given, or not given in time from the towboat, negligence may be imputed to the defendant in that as well as in any other respect. If orders were given and not obeyed by plaintiff or his hands, the point is applicable, and in that sense affirmed. The facts in regard to it are for the jury.

"As regards the ninth point, the facts there supposed are for the jury. If the plaintiff's hands stood to their oars till their lives were apparently in imminent danger, or as long as their efforts could be expected to accomplish anything toward saving the boats, no negligence can be imputed to them. If they did as indicated in this point, whilst their lives were not in apparent imminent danger, and whilst their efforts might have availed to save the boats, the proposition in the point would be correct, otherwise not.

"10. This point is affirmed. Unless there was negligence or want of ordinary care and precaution in handling or managing the towboat, and thereby the water was thrown into the flats or metal boats, responsibility would not attach to the defendant.

"11. This point is negatived if intended to affirm generally, that where a towboat undertakes to tow other boats unfit to be towed, and they are lost, no liability attaches. The doctrine in regard to the question raised by this and the tenth point, I hold to be this. When the character or burden of a boat applying to be towed, is such that it cannot be towed safely, and its character or burden is such as cannot be discerned by ordinary care and attention on the part of the towboat, or is concealed, then and in that case no liability would attach to the towboat should the tow be lost on the voyage. But if the character and loading of the *tow* is visible and open to all—such as an open flat loaded with metal, and her depth in the water and everything in regard to her is patent to all, it would be culpable negligence on part of a towboat captain to undertake to tow such flat if too heavily loaded, or if containing too much water to be towed with safety. The towboat captain I hold to be the best judge of what his towboat can do, and if applied to to tow a craft too heavily loaded or otherwise unfit to be towed, he should decline, or apprising the owner, make special terms as to the risk.

"Apply this doctrine to the facts in evidence as you may find them, and decide the question suggested by these points, Nos. 10 and 11, accordingly.

"The testimony in the case I leave entirely with the jury. Not

[Hays v. Paul.]

having taken full notes, I wish to suggest no opinion as to its weight or effect on either side."

The jury found for the plaintiff $2538.35, and the defendant, having excepted to the charge of the court, removed the case into this court.

*Woods & Loomis*, for the plaintiff in error.—On the question of damages, the judge charged, "we must compare his conduct with what we conceive careful men would have done under similar circumstances." The court should not have substituted the conception of the jury for their determination based on the evidence in the cause.

The eighth point was distinct and explicit, and should have received a direct answer; the court erred in complicating the answer with language calculated to confuse and mislead. There was no evidence to justify the qualification of the court. So of the answer to the ninth point, and also to the tenth.

The responsibility which the court in answer to the eleventh point says is upon the owner of the towboat does not exist: Leonard v. Hendrickson, 6 Harris 42.

A towboat captain is not responsible for a boat towed which is rotten or overloaded: Caton v. Rumney, 13 Wend. 390. Citing also Tripner v. Abrahams, 11 Wright 228, 229.

*S. A. Purviance* and *A. M. Brown*, for defendant in error.— The court was not asked to lay down a rule for assessing the damage.

Owners of steam tow boats are bound to use a reasonable degree of care and attention that the towed boat incur no injury from their negligence: Leonard v. Hendrickson, 6 Harris 44. Injury is *primâ facie* evidence of negligence: Vanderslice v. Superior, 9 Pa. Law Jour. 350; Leech v. Owner of Steamboat Morris, 1 Phila. Rep. 140, 1 Hilliard on Torts 135, 136.

The opinion of the court was delivered, January 8th 1866, by

AGNEW, J.—Upon the general principle, applicable to the case, Hays, the defendant below, seems to have had every proper advantage, his first seven points having been answered by the court affirmatively and without qualification. It was only when those were reached which applied these principles to the circumstances of the case, any qualification became necessary. But of this he complains and contends that his points were in clear, distinct and explicit language, that he was entitled to a distinct affirmative answer without qualification. This, however, depends on the state of the evidence. A party is entitled to full, fair and explicit answers to his prayer for instruction, if pertinent; but when the evidence requires it, it is not only the right but the duty of the

[Hays *v.* Paul.]

court to make such qualification as will adapt the instruction to the facts, and enable the jury to make the discrimination necessary to decide the cause correctly. Abstract propositions and propositions which meet but a single view of the evidence, when it admits of another, if answered without qualification will often lead to error. Points may be very carefully framed, but as remarked by Huston, J., in Coates *v.* Roberts, 4 Rawle 112, "are often drawn with as much care as candour." He emphatically denies that propositions of counsel must always be answered precisely as put, giving as the reason that the jury must find on all the facts and not on a partial view. This subject has been so well discussed by Lewis, J., in Rush *v.* Lewis, 9 Harris 72, I need only to refer to his remarks there and to add the cases of Utt *v.* Lang, 6 W. & S. 178, and Crowell *v.* McConkey, 5 Barr 176.

The eighth point of the defendant, assuming the duty of the plaintiff and his hands to aid the tug in managing the flotilla and to obey the orders of the tug's pilot, was answered in the affirmative, but was qualified by saying that if sufficient orders were not given by the pilot or not given in time, negligence could be imputed in that as well as in any other respect. There was no error in this. When a steam-tug capable of locomotion, and, as we must presume from the undertaking, of managing the boat taken in tow, assumes control of the tow and its crew, and to give the orders necessary; the time and the sufficiency of these orders fall within the duty of the tug. If they be insufficient or be given too late, it is negligence on part of the tug. The only question therefore is, whether there was evidence to justify the qualification and carry the case to the jury. Of this there is no doubt. John Paul testified that he saw the boat would strike the pier, but dared not pull until the word was given, as they (the tug) had the control. "Just as we came up to the pier," he continues, "they halloed, left, and at the word we pulled left, but before we got half a stroke the boat struck the pier." In his cross-examination he says: "We did not run away and leave a steamboat man to pull at the oar, we pulled about half a stroke before she struck; when they called to us we were on the bow plank; it struck the head of the pier, not the side of the pier." Samuel Staley says: "We went on flatboats to obey orders of pilot. Just before struck, halloed to pull left, and we did one or two strokes; men jumped in and obeyed orders; when halloed, very near to pier, only time to strike a stroke." Wallace Gould says: "John Paul and Samuel Staley were with me; we were at the oars. They called left, and we pulled left. We pulled pretty near one stroke after we were told to pull left, till it struck. We could not have done more." There was ample evidence to go to the jury that the crew of the flatboat were not absent from their

[Hays v. Paul.]

oars, and that the order to pull left was not given in time to avoid the disaster. This it is true was strongly rebutted by the defendant's testimony, which tended to show that the order was given and the bell tapped in time, and was not obeyed by the flatboat crew, who were away from their oars, engaged in bailing. But the very contradiction in the testimony was the reason why the qualification should be introduced, in order that the evidence should be fairly passed upon by the jury.

For the same reasons the qualification of the answer to the ninth point was necessary. If the evidence of the plaintiff be true, his hands stood to their oars and obeyed orders until the very moment the boat struck and began to sink. If they did, then clearly their lives were in danger when it began to sink, and they were justified in then leaving their posts. It requires no straining of facts to induce any one of ordinary intelligence to believe that an open flatboat laden with metal, and drawing water within nine inches of the top of her siding, would go to the bottom very suddenly, when her side was crushed in and she was jammed between the tug and the pier. The contradiction of the defendant's evidence only rendered it more necessary both sides should be fairly placed before the jury.

The errors assigned to the answers to the tenth and eleventh points may be considered together. The tenth was answered in the affirmative, and it is only the answer to the eleventh as applied to both points, which is impugned. But we discover no error in the principles asserted in this reply. It is the business of one who uses a tug for towing to know the capabilities of his tug, and its practical effects upon the boats he tows. Backing, as it is termed, is one of the useful features in the power of a tug, enabling it to hold its tow against the current and to control the movement where dangerous passages are to be effected or obstructions to be avoided. Being one of the uses of the tug, the owner is presumed to understand its effects. The flats made fast to the bow of the tug were out of the influence of the waves astern, but in backing the paddle waves flow towards the bow. Whether these waves would reach the stern of the flats and overflow the slight height of nine inches by swell, were facts which it is to be presumed the tug-owner would know better than the owner of the flats. Certainly it was his business to know the power of his paddles, the influence of the current, the swell produced and the probable distance it would reach. The allegation is that the flats were too deeply laden for towing safely. The answer of the court had reference to these things, which belong to the knowledge of the tug-man; and their doctrine in the language of the learned judge was this: " But if the character and loading of the tow is visible and open to all—such as an open flat loaded with metal—and her depth in the water, and everything

in regard to her is patent to all, it would be culpable negligence on part of a towboat captain to undertake to tow such flat if too heavily loaded, or if containing too much water to be towed with safety. The towboat captain I hold to be the best judge of what his towboat can do, and if applied to tow a craft too heavily loaded or otherwise unfit to be towed he should decline, or, apprising the owner, make special terms as to the risk." In view of the facts there was no error in this. There was an open boat laden with metal exposed to view, the water rising upon its sides within nine inches of the top, fastened partly ahead of the tug. Now who should know whether backing might be necessary, and if done whether the waves would reach the tow—how high their swells and whether they would probably flow into the tow ? This is one of those undertakings which imply sufficient knowledge and skill to perform it safely, and contemplated therefore a knowledge on part of the tug-man of the effects produced by his tug, and their probable influence upon the open and visible condition of his tow. As to all that was not plainly open and visible to his view, the court conceded, that no duty lay upon him.

The errors assigned to the general charge are not supported. Unless it be manifest from the want of a proper instruction that the jury has fallen into error, it is not the practice of this court to reverse for mere omissions, when no instruction is prayed for.

The plaintiff in error complains that the court left the standard of diligence to the mere conception or notion of the jury. This is not correct. It is only by detaching this portion of the charge from its proper connection, that it can be made obnoxious to the criticism of the argument. In this and several preceding paragraphs the judge explained in general terms the nature and degree of the care, skill and diligence demanded by the law in those undertakings which require reasonable skill and diligence. In the sentence immediately preceding he had said : " A party employed in any position of trust over the property of others, is held to the same care and attention that he would exercise over it, were the property his own ; but in ascertaining what that care and attention is, which he would exercise were the property his own, we must measure them by other prudent and reasonable men as the standard." Now it is in reference to this measure of care and attention the language excepted to is used, and the judge continuing his thought, says: " We must compare his conduct with what we may *conceive* careful men would have done under similar circumstances," which was as much as to say—You must make the conduct of prudent and reasonable men the standard ; and what you think a prudent and reasonable man ought to have done under the circumstances, that you would require of this person under the circumstances. It was not that the jury should follow their own notions, letting go of the facts in the case ; but,

[Hays *v.* Paul.]

taking the facts, that they should measure the care and diligence required under those facts by the same rule a reasonable and prudent man, acting in his own affairs, would exercise for himself under like circumstances. It is only by disconnecting kindred sentences and by severe criticism of the word *conceive*, that the learned judge can be convicted of error; but "to conceive" is as often used to signify "to think," "to understand," "to have a complete idea of," as it is to imagine, to fancy: Webster's Dictionary.

None of the errors being sustained, the judgment is affirmed.