## Zubik *v.* Bethlehem Steel Company, Appellant.

Argued October 22, 1940.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, RHODES, and HIRT, JJ.

*P. K. Motheral,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*John B. Nicklas, Jr.,* of *McCrady, McClure, Nicklas & Hirschfield,* with him *E. B. Wolfe,* for appellee.

OPINION BY RHODES, J., February 28, 1941:

This is a workmen's compensation case. The claimant is the widow of Robert Zubik, who was accidentally killed in the course of his employment with defendant company. The only question presented is one of jurisdiction—whether the fatal accident so happened as to bring it within admiralty and maritime jurisdiction, or whether the Workmen's Compensation Act (Act of June 4, 1937, P. L. 1552, which reenacted and amended the title and act approved the second day of June, 1915, P. L. 736, 77 PS §1 et seq.) applies.

The claim for compensation was allowed by the referee, whose findings of fact, conclusions of law, and award were affirmed by the Workmen's Compensation Board. The court below affirmed the board and entered judgment in favor of claimant. Defendant has appealed.

The facts are not in dispute. Deceased was drowned in the Allegheny River, a navigable stream, on November 21, 1938, as the result of an accident sustained in the course of his employment with defendant. Defendant was engaged in the erection of the Highland Park Bridge, which connects the south shore of the Allegheny River at Highland Park, Pittsburgh, Pa., with the north shore in the Borough of Aspinwall, Pa. Deceased was employed as a life guard, and he was thus carried on defendant's payroll. At the time of the accident deceased's duties were to transport workmen who were working on the bridge span, or piers, from the north shore of the river to their place of employment, either by using his motor gasoline launch or a rowboat, and, after depositing the men on the bridge by boat, to take up his position under the span and patrol the water thereunder, acting as a life guard in the event any men fell from the span into the river. At the conclusion of the day's work, or whenever required to do so, he would transport the men back to the north shore of the river. The original hiring as a life guard provided for the use of deceased's rowboat. The evidence does not disclose when he started to use his eight-ton motor boat. Whenever the motor boat was used defendant furnished the gasoline and oil. Deceased was paid an hourly wage, working forty hours a week, and it is conceded that the relationship of employer and employee existed. On the day of the accident, November 21, 1938, at approximately 8 a.m., deceased had taken three workmen to pier No. 3 in the center of the river in a dense fog. On his way back to the north shore he lost his direction in the fog, proceeded down-

stream, went over a dam, located approximately 500 feet west of the pier, and was drowned.

Defendant insists that deceased's contract of employment with defendant was a maritime contract, having direct relation to navigation, and that the matter is exclusively within admiralty jurisdiction.

Under the Federal Constitution the judicial power shall extend "to all Cases of admiralty and maritime Jurisdiction." United States Constitution, art. 3, §2, cl. 1, U. S. C. A. This provision was made effective by section 9 of the Judiciary Act of 1789 (ch. 20, 1 Stat. at L. 76), whereby the district courts of the United States were given "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction ......," and so continued in the Judicial Code, §24 (3), 28 U. S. C. A. §41 (3).

It is the established principle with respect to those activities which are directly connected with commerce and navigation in their interstate and international aspects that the law must be uniform throughout the United States, and that the laws of the various states cannot modify or vary it. *Southern Pacific Co. v. Jensen,* 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900. See, also, *Knickerbocker Ice Co. v. Stewart,* 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145.

It is also the general doctrine that, in contract matters, admiralty jurisdiction depends upon the nature of the transaction, and in tort matters upon the locality. *Grant Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008.

In the present case, as was said in *P. J. Carlin Construction Co. v. Heaney,* 299 U. S. 41, 57 S. Ct. 75, 81 L. Ed. 27: " 'No recovery is sought against the employer ...... because of any wrong alleged to have been done by the employer. A recovery is sought as the result of injuries for which the statute [The Work-

men's Compensation Law, Consol. Laws N. Y. C. 67], read into the contract, gives a right to recovery.'"

But it is also a general rule that, where the employment concerns only local matters and has but an incidental relation to navigation and maritime commerce, a state law, such as our Workmen's Compensation Act, may be applied, since, under such circumstances, its application will not work material prejudice to any characteristic features of the general maritime law.[1] *Grant Smith-Porter Ship Co. v. Rohde*, supra; *Millers' Indemnity Underwriters v. Braud et al.*, 270 U. S. 59,

[1] The general scheme of the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 33 U. S. C. A. §§901-950, was to provide compensation to employees engaged in maritime employment for disability or death resulting from injury occurring upon the navigable waters of the United States where recovery through workmen's compensation proceedings might not validly be provided by state law. See *Nogueira v. New York, New Haven & Hartford Railroad Co.*, 281 U. S. 128, 131, 50 S. Ct. 303, 74 L. Ed. 754. By section 3 of that act, 33 U. S. C. A. §903 (a) (1), a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net cannot recover compensation under the act.

In passing the act, Congress apparently had in mind the decisions which state that, where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations, and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity, and thus abstained from occupying so much of the field as the states could legally enter. *Crowell v. Benson*, 285 U. S. 22, 39, 52 S. Ct. 285, 287, 76 L. Ed. 598; *New Amsterdam Casualty Co. et al. v. McManigal*, 87 F. 2d 332, 334.

For Jones Act, see 46 U. S. C. A. §688. This act was remedial for benefit and protection of seamen, and was not repealed by the Longshoremen's and Harbor Workers' Compensation Act. See *The Arizona v. Anelich*, 298 U. S. 110, 56 S. Ct. 707, 80 L. Ed. 1075; *Obrecht-Lynch Corp. et al. v. Clark*, 30 F. 2d 144.

46 S. Ct. 194, 70 L. Ed. 470; *Sultan Railway & Timber Co. v. Department of Labor and Industries of the State of Washington*, 277 U. S. 135, 48 S. Ct. 505, 72 L. Ed. 820; *P. J. Carlin Construction Co. v. Heaney*, supra; In re *Herbert's Case*, 283 Mass. 348, 186 N. E. 554.

In *Grant Smith-Porter Ship Co. v. Rohde*, supra, an employee, a carpenter, was injured at work on a partially completed vessel lying in navigable waters. It was held by the Supreme Court of the United States that, although the incompleted structure upon which the accident occurred was lying in navigable waters, neither the employee's general employment nor his activities at the time had any direct relation to navigation or commerce; that the injury was suffered within a state whose positive enactment prescribed an exclusive remedy therefor, and, as both parties had accepted and proceeded under the statute, it could not properly be said that they consciously contracted with each other in contemplation of the general system of maritime law; and that, under such circumstances, regulation of the rights, obligations, and consequent liabilities of the parties, as between themselves, by a local rule, would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations.

In *Millers' Indemnity Underwriters v. Braud et al.*, supra, it was held that, although the work of an employee submerging himself from a floating barge anchored in a navigable river in order to remove the timbers of an abandoned set of ways was maritime in nature, and the record disclosed facts sufficient to show a maritime tort to which the general admiralty jurisdiction would extend save for the provisions of the state compensation act, recovery was under the state workmen's compensation law, since the matter was one of mere local concern, and its regulation by the state

would work no material prejudice to any characteristic feature of the general maritime law.

The holding of the New York Court of Appeals (*Lahti v. Terry & Tench Co., Inc., et al.,* 240 N. Y. 292, 148 N. E. 527) that the rights and remedies of one injured while employed in the construction of a pier, when standing on a floating raft in navigable water, were fixed by maritime law, was reversed by a memorandum opinion of the United States Supreme Court (273 U. S. 639, 47 S. Ct. 90, 71 L. Ed. 817) upon the authority of *Millers' Indemnity Underwriters v. Braud et al.,* supra.

In *Sultan Railway & Timber Co. v. Department of Labor and Industries of the State of Washington,* supra, it was held that a state may bring within the operation of its workmen's compensation laws men employed in handling logs on navigable waters of the United States in connection with placing them in booms and conducting them to sawmills before transportation is begun and after it is ended.

In *Alaska Packers' Ass'n v. Industrial Accident Commission,* 276 U. S. 467, 469, 48 S. Ct. 346, 72 L. Ed. 656, it was held that, even if the cause of action was within admiralty jurisdiction, the work was not "so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law. The work was really local in character."

In *P. J. Carlin Construction Co. v. Heaney,* supra, the defendant construction company was engaged in building operations on an island in a navigable river. Heaney and others employed about the work crossed daily from the mainland to the island on a steamboat. The owner's contract with the construction company provided that he was to charge fares at the rate of 10 cents a round trip, and that if his daily fares did not amount to sixty dollars the company would pay him the difference. While on her way to the island, with

Heaney on board, an explosion wrecked the boat, and Heaney was hurt. It was argued that such a matter was subject to the exclusive jurisdiction of admiralty law. The United States Supreme Court, in affirming the judgment of the New York Court of Appeals (269 N. Y. 93, 199 N. E. 16), said (299 U. S. 41, 44) : "The present attempt is to enforce a liability assumed by employer and insurance carrier under a non-maritime contract. All parties, as well as the accident, were within the limits of New York State. The contract had no direct relation to navigation; to enforce it against the parties before us will not materially interfere with the uniformity of any maritime rule."

See, also, *Wooley v. E. M. Wichert Co. et al.*, 275 Pa. 167, 118 A. 765; *Zahler v. Department of Labor and Industries*, 125 Wash. 410, 217 P. 55; *Surgeon v. Alaska Packers' Ass'n et al.*, 26 F. Supp. 241.

Defendant relies principally upon *Southern Pacific Co. v. Jensen*, supra. In this case the deceased employee was engaged in driving a small electric freight truck into a steamship where it was loaded with cargo, then driving the truck out of the vessel upon a gangway connecting the vessel with the pier in North River, and thence upon the pier where the lumber was unloaded from the truck. He jammed his head between the lumber and the ship, thereby breaking his neck. Compensation was awarded under the New York state statute. The United States Supreme Court reversed the lower court, and held that the work of a stevedore, in which deceased was engaged, was maritime in nature, that his employment was a maritime contract, and that the injuries which he received were likewise maritime.

The Jensen case is not applicable or controlling in the present case; deceased was not a stevedore in maritime service. State compensation acts of course do not apply to injuries sustained in such maritime service.

In the present case no question of interstate carriage is involved, nor was there a maritime tort having direct

relation to navigation and uniformity of maritime law, which is governed exclusively by the principles of that law. Such were the facts in *Spencer Kellogg & Sons, Inc., v. Hicks,* 285 U. S. 502, 52 S. Ct. 450, 76 L. Ed. 903. The bridge was being constructed entirely within the state of Pennsylvania. It was a local matter. Deceased's employment had to do solely with the construction of this intrastate bridge, and he was carried on defendant's payroll as a life guard, and was paid by the hour. Taking men to and from the bridge, or the piers, and the shore at the beginning and end of the day's work consumed but a small part of his working day. Most of the time he was occupied with his duties under the bridge, which were to be on guard, and to "sit in a rowboat and watch in case anything would fall off the bridge, like a man's tools, or a hat, to be there immediately to take care of it." His rowboat or motor boat was necessary not only to permit him to go back and forth to the shore, but was a requisite in the performance of his duties under the bridge. Going back and forth to the shore with his rowboat or motor boat was purely local in character, and incidental to his principal duties. Such incidents in his employment were by function and distance local to the bridge under construction and a part of the enterprise. He was operating no vessel on navigable waters carrying passengers from place to place or port to port where local laws would differ. It may be said that the accident here in question was maritime in the aspect that it occurred on navigable waters, but this alone is not sufficient to bring this case under admiralty jurisdiction. The relation of employer and employee existed, and the general task in which deceased was engaged was local in character, to wit, building of the bridge within the state of Pennsylvania. He was under the direction and supervision of the superintendent in charge of operation for defendant company. There was a limited locus of employment, and no disturbance of

uniformity of relationship of employer to employee would be created, even if certain portions of the contract of employment should be regarded as maritime, and nevertheless the employment status which was created be controlled by our Workmen's Compensation Act. See *Alaska Packers' Ass'n v. Marshall et al.,* 95 F. 2d 279, 282.

No valid reason appears why our Workmen's Compensation Act should not exclusively apply to the relationship between deceased and defendant. The matters involved were of merely local concern and within the orbit of our state law. See *New Amsterdam Casualty Co. et al. v. McManigal,* 87 F. 2d 332, 334. If, incidental to his principal duties, he carried workmen with him from the shore to the bridge in the morning and returned them in his rowboat or motor boat in the evening, this does not necessarily make his employment wholly maritime in nature, and his contract of employment a maritime contract subject to admiralty jurisdiction.

As we have pointed out, the nature, character, and location of the work in which deceased was engaged was not maritime to the extent that admiralty has sole jurisdiction of this case. On the contrary, his whole employment had to do with a matter of local concern, and was itself local in every respect, having no direct and immediate relation to navigation, business, or commerce of the sea. Therefore, we are unable to conclude that his contract of employment had, or intended to have, any direct relation to navigation and commerce, or was a maritime contract subject to admiralty jurisdiction.

We agree with the board and the court below that deceased's death was compensable under the Workmen's Compensation Act. Certainly, no material prejudice to any characteristic feature of the general maritime law or interference with its uniformity will result.

Judgment is affirmed.