## PUBLICKER INDUSTRIES, Inc. v. TUGBOAT NEPTUNE CO. et al.

### No. 9679.

United States Court of Appeals
Third Circuit.

Argued Nov. 15, 1948.

Decided Dec. 1, 1948.

Otto Kraus, Jr., of Philadelphia, Pa. (Howard T. Long and Howard M. Long, both of Philadelphia, Pa., on the brief), for appellants.

S. B. Fortenbaugh, Jr., of Philadelphia, Pa. (Benjamin F. Stahl, Jr., and Clark, Brown, McCown, Fortenbaugh & Young, all of Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and O'CONNELL, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by Tugboat Neptune Company and Tugboat Triton Company, the owners of the tugboats Neptune and

Triton respectively, from a judgment of the United States District Court for the Eastern District of Pennsylvania awarding damages against them and in favor of Publicker Industries, Inc., the owner of Pier 103 South Wharves in Philadelphia for injuries to the pier which resulted from the undocking of the Steamship William J. Worth. The case has been here before and the facts are stated in our previous opinion. Publicker Commercial Alcohol Co. v. Independent Towing Co., 1948, 165 F.2d 1002. The district court had originally entered judgment in favor of the plaintiff against American-Hawaiian Steamship Company, the agent for the United States as owner of the William J. Worth, and had dismissed the complaint as to the two tugboat companies. We reversed the judgment as to American-Hawaiian Steamship Company and vacated the judgments of dismissal against the two tugboat companies. Our mandate directed that the district court redetermine the liability of these two companies in accordance with the law of Pennsylvania, the action being a civil one brought under the diversity jurisdiction.

Following the receipt of our mandate the district court held a further hearing. The court found as a fact that the captains of the tugboats Neptune and Triton were aware of the excessive draft of the Worth, the depth of water in the slip adjacent to Pier 98, the fact that there was a bar or hump in the center thereof and the condition of the tide and the wind. The court further found that the two captains realized the prospective difficulty in the moving of the vessel in the face of such conditions but undertook to accomplish the operation in spite of the known risk although each tugboat had radio communication facilities which the captains could have used to request the assistance of additional tugs. The court also found that Captain Marvel of the Neptune went on board the Worth to act as the undocking pilot and that, except for the original casting off, Captain Marvel gave all orders during the undocking operation and was in general charge of that operation.

Upon the facts which it found the court concluded as a matter of law that the damage to Pier 103 was caused by the fault and negligence of the two tugboat companies in that their agents, the captains of the tugboats, did not secure additional towing services required to move the Worth safely from its dock but attempted to undock the vessel with inadequate towing facilities under circumstances which led them to believe that such undocking would be difficult and hazardous. The judgment in favor of the plaintiff and against the defendant tugboat companies, which is the subject of this appeal, was thereupon entered by the court.

The appellants contend that the court erred in finding the captains of the tugboats guilty of negligence and that in any event the only negligence was that of Captain Marvel of the Neptune in the way in which he directed the undocking operation from the bridge of the Worth and that since during this period he must be regarded as the employee of the Worth and not of the tugboat companies the latter should not be held liable for his acts.

██ We find both contentions to be wholly without merit. As to the first there is ample evidence to support the finding of the district court that before they started the captains of the two tugboats were aware of the hazards of the operation which they were about to undertake and of the inadequacy of their tugboats to accomplish it with safety and that nevertheless they proceeded to undertake to do what they knew could not be done with safety. Both Captain Marvel of the Neptune and Captain Cooper of the Triton were thus rightly found to have been guilty of negligence in proceeding with the undocking operation before ever the former boarded the Worth and undertook to direct that operation. This follows both under the law of Pennsylvania[1] and the admiralty law.[2]

Our conclusion as to the tugboat companies' negligence, through their captains,

[1] Hays v. Paul, 1866, 51 Pa. 134, 142, 88 Am.Dec. 569.
[2] The Syracuse, 1870, 12 Wall. 167, 79 U.S. 167, 20 L.Ed. 382; The Margaret, 1876, 94 U.S. 494, 24 L.Ed. 146; Vessel Owners' Towing Co. v. Wilson, 7 Cir., 1894, 63 F. 626; American S. African Line v. Sheridan & Co., D.C.E.D.Pa. 1935, 1936 A.M.C. 287.

prior to the commencement of the undocking operation is enough to justify the judgment against them regardless of the merits of their second point which relates to Captain Marvel's alleged negligence in conducting that operation.[3] Nonetheless we have considered the latter and find it also to be without merit. The appellants' contention is that Captain Marvel was loaned by the Tugboat Neptune Company to the Worth during the time that he was directing the undocking operation from the bridge of the latter vessel and accordingly became during that time the employee of that vessel and its owner. Asserting this to have been the fact the appellants contend that under the law of Pennsylvania the Tugboat Neptune Company during that time was not responsible for the acts of its captain thus loaned to the United States, the owner of the Worth, and that his negligence during the period in question was accordingly attributable only to the Worth and its owner.

We do not question the rule of Pennsylvania law which the appellants invoke with respect to the non-liability of an employer for negligent acts of his employee committed while the latter has been loaned to another employer but we find the rule not to be applicable here. For in this case the court was justified by the evidence in finding, as it did, that Captain Marvel of the Neptune directed the undocking operation, giving all the orders involved except for the original casting off of the Worth, and that he and not Captain Ryder of the Worth was in general charge of the undocking operation. It thus appears that Captain Marvel was not loaned by the Tugboat Neptune Company to the Worth and did not come under authority of Captain Ryder of that vessel or become its employee for the time. On the contrary it is settled that under the circumstances present here

the relation of the two tugboat companies to the Worth and its owner was that of independent contractors.[4]

The appellants, however, call attention to a towage agreement which subsisted at the time between the United States, the owner of the Worth, and Independent Towing Company, a corporation associated with the two tugboat companies by virtue of the fact that the entire capital stock of all three corporations was owned by a common parent company. The Independent Towing Company appears to have acted as agent to secure employment for the tugboats of the two tugboat companies and its towage contract with the United States contained the standard form of pilotage clause, as follows: "Whenever the Master or other officer of any tug or any licensed pilot goes on board a vessel to assist her movement or handling, he becomes and continues to be solely the servant of said vessel and her owners in respect of all acts done by him and all orders given by him to any tugs engaged or to said vessel or otherwise in the movement or handling of said vessel; and none of the tugs or their owners, agents or charterers shall be responsible or liable for any claims or any damages caused by or resulting from such acts or orders."

The appellants assert that by virtue of this pilotage clause they must be absolved from all liability for the negligent acts of Captain Marvel committed while he was on board the Worth. We cannot agree. For even if we assume that the tugboat companies were entitled to the benefit of the pilotage clause in the contract between their agent and the United States the fact remains that the clause is not binding upon the plaintiff in this case who was not a party to the towage contract. It has been so held in the admiralty law.[5] Since the matter is one involving the construction

---

[3] The district court did not find Captain Marvel negligent in his direction of the operation once it had begun. On the contrary Captain Ryder of the Worth testified that he approved Captain Marvel's orders given on the bridge of the Worth and that if he had not approved them he could have rescinded them and taken the ship himself.

[4] Sturgis v. Boyer, 1860, 24 How. 110,

65 U.S. 110, 16 L.Ed. 591; The Dorset, 4 Cir., 1919, 260 F. 32; Calzavaro v. Planet S. S. Corporation, 4 Cir., 1929, 31 F.2d 885; Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, 1933, 261 N.Y. 455, 185 N.E. 698.

[5] The Niels R. Finsen, D.C.S.D.N.Y. 1931, 52 F.2d 795; Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, 1933, 261 N.Y. 455, 185 N.E. 698.

and effect of a maritime contract[6] the courts of Pennsylvania would adopt and apply the maritime law with respect to it [7] even though the tort here sued on is not a maritime tort.[8]

Accordingly, while it was proper for the court to consider the pilotage clause in determining the actual fact as to whether Captain Marvel was in control of the undocking operation or was acting under the orders of Captain Ryder, the clause was not conclusive upon that point and it was, therefore, not error for the court from the other evidence in the case to find the actual fact to be that Captain Marvel acted throughout as employee and agent of the tugboat companies.

The judgment of the district court will be affirmed.

6 Knapp, Stout & Company v. McCaffrey, 1900, 177 U.S. 638, 643, 20 S.Ct. 824, 44 L.Ed. 921; Grant Smith-Porter Co. v. Rohde, 1922, 257 U.S. 469, 476, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008; Moran Towing & Transportation Co. v. Navigazione Libera Triestina, S. A., 2 Cir., 1937, 92 F.2d 37, 38.

7 Zubik v. Bethlehem Steel Co., 1941, 144 Pa.Super. 13, 18 A.2d 441.

8 Cleveland Terminal & Valley R. v. Cleveland Steamship Co., 1908, 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508, 13 Ann. Cas. 1215.